# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| GILBERTO GÓMEZ<br><br>Plaintiff<br><br>v.<br><br>WALGREENS OF SAN PATRICIO, INC., WALGREENS OF PUERTO RICO, INC., WALGREENS CO., ROSA PEÑA, EFRAIN MORAN PERDOMO, INSURANCE COMPANY ABC<br><br>Defendants | CIVIL NO.<br><br><br><br>CIVIL ACTION<br><br>PLAINTIFF DEMANDS TRIAL BY JURY |

## COMPLAINT

TO THE HONORABLE COURT:

NOW COMES the Plaintiff, Gilberto Gómez Perdomo, through the undersigned attorneys and respectfully alleges and prays as follows:

### I. NATURE OF ACTION

1. This is an action brought by plaintiff Gilberto Gómez Perdomo (hereinafter "Plaintiff" or "Gómez") against his employer, Walgreens of San Patricio, Inc., Walgreens of Puerto Rico, Inc., Walgreens Co. (hereinafter collectively referred to as "Defendants" or "Walgreens"), Rosa Peña, Store Manager of Walgreens Condado, and Efraín Morán Perdomo, Executive Assistant and Supervisor of Walgreens Condado, for discrimination by reason of a disability, national origin and retaliation for expressing both his dissatisfaction with Defendant's unlawful employment practices and his intent on seeking protection of state and federal rights.

2. The Plaintiff brings this action to remedy the depravation of rights secured to him, under the constitutions and laws of the Commonwealth of Puerto Rico and of the United States of America.

3. Mr. Gómez alleges, in synthesis, that Walgreens discriminated against him on the basis of his disability in violation of Title I of the Americans with Disability Act ("ADA") and the ADA Amendments Act of 2008, 42 USC § 12101, *et seq.* as amended, Puerto Rico Law No. 44 of July 2, 1985 (PR Law No. 44) and Puerto Rico Law No. 100 of June 30, 1959, among others. He also suffered retaliation for exerting his right to question Walgreen's unlawful employment practices.

4. Mr. Gómez has suffered emotional and pecuniary damages as a result of Defendants' actions.

5. Plaintiff asserts federal question jurisdiction, in that he raises claims under federal law and has exhausted the administrative process in the federal system. He is requesting compensation for his sufferings, front and back pay and benefits, liquidation of vacation and bonus pay and applicable penalties, double damages, punitive damages, and declaratory and equitable relief, as well as costs, interests and attorneys' fees.

6. Plaintiff reserves the right to amend and add additional causes of action to this complaint by regular amendment pursuant to Rule 15 of Federal Rules of Civil Procedure.

## II. JURISDICTION

7. The jurisdiction of this Honorable Court is invoked pursuant to Title I of the ADA. The Plaintiff also invokes this Honorable Court's supplemental jurisdiction, pursuant to 28 USC § 1367, an seeks relief under Law 100 of June 30, 1959, as amended, 29 LPRA § 146. *et seq.*; Law Number 44 of June 2, 1984 as amended; Law 80 of May 30th, 1976; and Article 1802 of the Puerto Rico Civil Code.

8. All conditions precedent to jurisdiction under the ADA have been complied with.

9. This action involves a sum in excess of $75,000.00 exclusive of interest and costs.

10. The Parties are all citizens of the Commonwealth of Puerto Rico, except for Walgreens Co., which is an Illinois citizen.

11. This is the proper venue to bring this action, since the facts relating to the cause of action arose in this District.

12. On or about December 19, 2012, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in San Juan, Puerto Rico. The charge was filed within one hundred eighty (180) days after the occurrence of one or more of the unlawful employment practices alleged herein.

13. On May 22, 2013, the EEOC issued Plaintiff a Notice of Right to Sue letter. Plaintiff filed the complaint in this case within the ninetieth (90th) day since the date on which the EEOC sent the Notice of Right To Sue.

14. Consequently, all jurisdictional prerequisites to the filing of this lawsuit have been fulfilled, and Plaintiff has exhausted his administrative remedies as required by law.

### III. PARTIES

15. Gómez was born in Dominican Republic. He suffers from a disability due to two accidents that happened during work hours while he was employed by Walgreens and is a resident of the Commonwealth of Puerto Rico.

16. Defendant, Walgreen Co., is a citizen of Illinois, with corporate headquarters at the following address according to its 2012 Annual Report: 108 Wilmot Road, Deerfield, Illinois 60015 and was responsible for handling a certain complaint filed by Plaintiff using Walgreens Corporate hotline. It's current President and CEO is Gregory D. Wasson.

17. Defendant, Walgreen of Puerto Rico, Inc. - a wholly owned subsidiary of Walgreen Co. - is a domestic corporation organized under the Laws of the Commonwealth of Puerto Rico, with the following address according to the Puerto Rico State Department: Road #2, 580 Buchanan Marginal Street, Villa Caparra, Guaynabo, PR 00966-1706. Its current President is Nivia L. Santiago Breban.

18. Defendant, Walgreen of San Patricio, Inc. - a wholly owned subsidiary of Walgreen Co. - is a domestic corporation organized under the Laws of the Commonwealth of Puerto Rico, with the following address according to the Puerto Rico State Department: Road #2, 580 Buchanan Marginal Street, Villa Caparra, Guaynabo, PR 00966-1706. Its current President is Nivia L. Santiago Breban.

19. Upon information and belief, Walgreen Co., Walgreen of Puerto Rico, Inc. and Walgreen of San Patricio, Inc. were joint employers of Plaintiff and for the purposes of this action should be treated as a single entity (hereinafter referred to as Walgreen or Defendant). Walgreen of Puerto Rico, Inc. and Walgreen of San Patricio, Inc. are both included in the consolidated financial statements of the parent, Walgreen Co.

20. Notwithstanding the foregoing, Defendant, whether treated separately or jointly, has continuously employed in excess of 20 persons at all relevant times and has been an "employer", as that term is defined by all the laws invoked in the Complaint.

21. At all relevant times, Defendant, whether treated separately or jointly, has been continuously engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C.A. § 12111(5), and Section 107(7) of the ADA,42 U.S.C.A. § 12117(a), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C.A. § 20003 (g) and (h).At all relevant times, Defendant, whether treated separately or jointly, has been a covered entity under Section 101(2) of the ADA, 42 U.S.C.A. § 12111(2).

22. Defendant, Mrs. Rosa Peña (hereinafter, Peña or Codefendant), was an employee of co-defendant Walgreen who worked as Gomez's supervisor and Store Manager in various Walgreen stores including Walgreen Condado. Mrs. Rosa Peña is of legal age and resident of Puerto Rico.

23. Defendant, Mr. Efraín Morán, (hereinafter, Morán or Codefendant), was an employee of co-defendant Walgreen who worked as Gomez's supervisor and Executive Assistant in Walgreen Condado.  Mr. Morán is of legal age and resident of Puerto Rico.

24. Insurance Company ABC is a generic term to designate any entity having insured Defendant for the acts alleged in the Complaint.

## IV. STATEMENT OF FACTS

25. Gómez started working for the Walgreen pharmacy located on the corner of Ashford and Condado Avenue (referenced herein as, Walgreen Condado or Condado Store), on October 2, 2007 as a Service Clerk in the warehouse.

26. During all the time that Gómez worked for Walgreens his performance either met or exceeded expectations.

27. On December 17, 2007, he suffered his first injury on the job when he hit his knee with a locker door that was left open.  Gómez received treatment for the accident at the Corporación del Fondo del Seguro del Estado (herein referenced as, "CFSE") and filed the required paperwork which Defendant also received.

28. On or close to 2009, Codefendant Rosa Peña, was designated Store Manager for the Condado Store.

29. On May 23, 2011, Gómez received his annual performance review from Rosa Peña and his overall performance met expectations.

30. On December 12, 2011, while working for Defendant, Gómez suffered a second injury also related to his knees when his leg was caught between a double door.  As a

5

result of the injury described above, Gómez had to be operated and afterwards had to go thru a rehabilitation process. Walgreens was fully aware of this situation.

31. Gómez filed claims for Workers Compensation according to the Law for the CFSE, and in connection with that process answered questions posed to them by representatives of the governmental agency that administers the program.

32. His operation and rehabilitation was performed by the CFSE and it is extensively documented. Gómez provided Walgreens with a copy of the CFSE documents that ordered him rest and/or treatments that forced him to be absent from work in order to justify his absences.

33. On August 16, 2012, the CFSE issued a letter to Walgreens and Gómez that stated that he had suffered partial, permanent disability related to the accident he suffered on December 12, 2011.

34. After his operation, Gómez requested and obtained a Handicapped Parking Permit from the Department of Transportation and Public Works and Walgreen's allowed him to use the Handicapped Parking Space available in the parking lot adjacent to the store.

35. As a result of the two accidents, Gomez suffers and continues to suffer from moderate to intense pain at different intervals during the day which causes significant difficulties for major life activities, including standing, walking, corporal balance, bending of knees, among others.

36. Peña, in conjunction with Morán, started a harassment and discrimination campaign against Gómez on or around September 2012 due to his disability and later on, in retaliation for having requested reasonable accommodation and conducting other protected activities.

37. On September 27, 2012, even though Walgreens was fully aware of Gómez's disability they informed him that he could no longer use the Handicapped Parking Space in the parking adjacent to the store, because it had to be available for customers.

38. However, some employees, including Peña and Morán, were allowed to continue using the parking adjacent to the store notwithstanding Walgreens Condado's new policy.

39. Gómez raised his objections in writing to Walgreens about depriving him and other employees of parking spaces.

40. When Mr. Gómez confronted Mrs. Peña for the previous decision, he was told that he could use and pay for parking spaces on the street where parking meters existed.

41. Walgreens did not engage in any interactive process with Gómez concerning his request and failed to make any arrangements to provide him with a parking.

42. In sum, Walgreen denied Plaintiff any reasonable accommodation.

43. On September 28, 2012, Gómez learned that a position in the grocery section, which had been occupied by Angel Vellón, was going to be available because Mr. Vellón was being transferred to Río Grande during the month of October. On that same day, Plaintiff verbally requested to be considered for the position in the grocery section which also allowed him to take care of his father.

44. Rosa Peña immediately told him that he was not able to get the promotion due to his disability and made no efforts to discuss with Gómez whether he could perform the essential functions of his job. Peña also told Gómez that his father condition was his personal problem.

45. On October 2, 2012 Gómez again requested in writing the position in the Grocery Department and a handicapped parking.

46. On October 11, 2012 a group of Walgreens Condado employees, including Gómez, sent a communication to Walgreen's central offices in Puerto Rico expressing the difficulties caused by depriving them of their parking privileges.

47. Later, Peña stated in writing the fact that Walgreens denied him the transfer was because he was be unable to perform the duties of his job due to his disability.

48. Peña also denied him the use of the Handicapped Parking Space available in the parking lot adjacent to the store and told him he should park on the street.

49. Moreover, Gómez complained about the unlawful employment practices occurring at Walgreens Condado using Walgreen's Corporate Hotline, which was established for employees to present ideas, raise concerns and ask questions without fear of retaliation.

50. During the time Gómez worked at Walgreens he had justified absences related to his injury and, on certain occasions, he had to take care of his father who suffered from Alzheimer. Walgreens was informed of the reasons for each absence.

51. During Gomez's employment, supervisor Morán used to make derogatory comments regarding people from the Dominican Republic. Morán knew that Gomez was born in the Dominican Republic.

52. Peña also threatened Gómez with the termination of his employment for totally false and unjustified reasons.

53. When Peña disliked an employee she would change the employee's schedule in order to create hardship and force the employee to resign, without following Walgreen's policy that established that changes to the schedule had to be announced two weeks in advance. Peña engaged in this behavior with regards to Gómez.

54. After Gómez worked for two years on a fixed schedule consisting of working five days a week from 7:00 am to 4:00 pm, with Fridays and Sundays off, without

justification, after his second on the job accident she changed his schedule to 8:00 am to 5:00 pm with Tuesdays and Thursdays off.

55. On occasions Gómez would voice his concerns regarding certain rights which were being violated by Walgreens affecting him and other co-workers.

56. When Gómez proceeded to clear his locker after being terminated, he realized that certain items from his locker were missing, including two notebooks which contained handwritten notes concerning employment-related events.

57. The only persons with access to the employee lockers were the employee that the locker was assigned to and certain managerial employees, including Peña.

58. The day Peña terminated Gómez she further retaliated against him by filing a false and frivolous claim against him with the Police for alleged stalking and by giving instructions to other Walgreens employees that they could not allow him to enter the store.

59. The objective behind Peña's false and frivolous complaint was to create a chilling effect on all other employees in the store who might want to voice concerns over Defendant's employment practices.

60. On December 14, 2012 Walgreens wrongfully terminated Gómez's employment.

61. On December 19, 2012 Gómez filed a Charge of Discrimination at the EEOC for the unlawful acts incurred by Defendants.

62. Due to his termination, Gómez was unable to fully enjoy the Christmas season and purchase Christmas gifts for his son causing him intense mental anguish and emotional distress.

63. On December 26, 2012 CFSE sent a letter to Walgreens in which it recommended that Walgreens affirmatively consider certain reasonable accommodations in order to maintain Gómez in the workforce.

64. After performing an investigation, the EEOC issued a Letter of Determination (the "Letter")

65. The EEOC in the Letter stated that:

a. "the investigation disclosed that [Walgreens] violated the ADAA by failing to engage in a good faith interactive process with [Gómez];

b. "Payroll records indicated that the working schedule between 5:00 am to 2:00 pm existed from August to September 2012", which Walgreens had denied.

c. Walgreens "terminated [Gómez] shortly after he complained about disability discrimination and requested a reasonable accommodation";

d. that Peña further retaliated against him "when she called the Police … creating a chilling effect on current employees";

e. that Peña "instructed the employees and her Executive Assistant to disallow [Gómez's] entrance to the store";

f. that "Peña has engaged, and is currently engaging, in several potentially discriminatory practices under EEOC statutes";

g. that Walgreens "Human Resources Department is improperly mixing personnel records together with medical records in violation of ADA's requirement that medical records be maintained separate from personnel files";

h. Walgreens "treated more favorably, at least two similarly situated employees who had not opposed or participated in the EEOC process".

66. In the Conciliation Agreement attached to the Letter the EEOC in the section titled Relief it required back pay and compensatory and punitive damages for the amount of $300,000.00, and prohibited retaliation.

67. In the Conciliation Agreement the EEOC requested immediate termination or demotion Peña, among other remedies.

68. Walgreens did not sign the Conciliation Agreement.

69. On May 22, 2013, the EEOC issued to Gómez the Notice of Right to Sue.

70. As a result of the events described herein, Gómez suffered considerable damages, including loss of compensation for his work, economic damages, significant mental, emotional, and physical sufferings, loss of self-esteem, as well as an affront to his dignity as a human being.

71. At the time Plaintiff was harassed and discriminated by Defendant, the Defendant was fully aware of the provisions of ADA and Law Number 100, *supra*. Defendant acted willfully and with reckless disregard of the law in harassing and discriminating against the Plaintiff, solely because of Gomez's disability and national origin. The harassment and discrimination against Gómez constitute a violation of ADA and Law Number 100, *supra* and as such, entitles the Plaintiff to recover double, punitive and compensatory damages.

## VI. STATEMENT OF CLAIMS

### FIRST CAUSE OF ACTION – PROHIBITED DISCRIMINATION BASED ON PLAINTIFF'S DISABILITY UNDER ADA AND ADAAA

72. Plaintiff alleges and realleges all previous paragraphs as if fully alleged herein.

73. Defendant is a covered entity under the American with Disabilities Act.

74. Plaintiff Colon suffers from intense, and sometimes extreme, pain of both knees at different intervals during the day due to the effects of two accidents suffered while performing his duties as an employee of Defendants.

75. Plaintiffs Gómez suffers from lack of balance and difficulties in walking, running and standing, including any major life activity involving moderate to strong pressure on the knees.

76. Mr. Gómez cannot perform activities like walking, running and standing for normal periods of time as the average person.

77. Due to the accidents described above, Mr. Gómez suffers an impairment and/or disability which substantially limits the major life activities of walking, running, and standing.

78. Mr. Gómez has a record of such an impairment.

79. Plaintiff Gómez is a qualified individual with a disability.

80. Mr. Gómez's impairment is neither transitory, nor minor.

81. Defendants, Walgreens and Peña, discriminated against Plaintiff during Plaintiff employment by discarding him outright for a position in the Grocery Department because of his disability.

82. Defendants did not engage in any communication exchange or interactive process of any kind with Mr. Gómez concerning any reasonable accommodation for Mr. Gómez despite his specific request to obtain the position in the Grocery Department.

83. Mr. Gómez was qualified and capable of performing the essential functions of the Grocery position with or without reasonable accommodation.

84. Before Mr. Gómez's request for the position, he had performed the essential duties of such position at the request of his superiors, including Mrs. Peña.

85. In any case, Defendants failed to accommodate Mr. Gómez in the position of the Grocery Department and dismissed him outright when he requested the position. See 42 U.S.C. § 12112(b)(5)(A).

86. Defendant further discriminated against Mr. Gómez by terminating him from his employment because of his disabilities.

87. Defendants allegations that Plaintiff engaged in sanctionable absenteeism was and is only a pretext of its unlawful, discriminatory practices.

88. Regardless Gómez status as a qualified protected individual under federal and state law, Defendants regarded Gómez as an individual with a disability, 42 U.S.C. § 12102(2).

89. Defendant also engaged in disability discrimination by not preserving documents, including handicapped certifications, Plaintiff had provided to Defendants for its employment record.

90. Defendant and Mrs. Peña engaged in disability harassment against Mr. Gómez.

91. Despite knowing about Mrs. Peña's harassing behavior towards Mr. Gómez, Walgreen failed to take remedial actions against her.

92. The events described herein constitute intentional and willful discrimination by Defendants for reason of Plaintiff's disability as prohibited by federal law.

93. Due to Defendants' acts, Plaintiff has suffered from emotional distress, anguish, and loss of enjoyment of life.

94. Plaintiff also suffered the loss of his home by foreclosure due to Defendants unlawful employment decisions and employment practices.

95. Mr. Gómez's requests and is entitled to compensatory and punitive damages in excess of $605,000.00.

### SECOND CAUSE OF ACTION - PROHIBITED DISCRIMINATION BASED ON PLAINTIFF'S DISABILITY UNDER STATE LAW NO. 44

96. Plaintiff alleges and realleges all previous paragraphs as if fully alleged herein.

97. Defendants are also liable to Gómez for prohibited discrimination based on a disability under Law No. 44 of July 2, 1985, as amended (PR Law No. 44).

98. Defendant, Walgreens, is a covered entity under PR Law No. 44.

99. Mr. Gómez is a person with a physical impairment according to PR Law No. 44.

100. PR Law no. 44 states that its dispositions should be liberally interpreted in favor of persons with disabilities. See 1 PR Stat Ann sec. 511a.

101. According to Article 3 of Puerto Rico Law No. 44, individual persons can be held liable for violation of said law.

102. Defendant, Walgreen, engaged in unlawful discrimination towards Mr. Gómez in violation of Law No. 44.

103. Mrs. Rosa Peña engaged in unlawful discrimination towards Mr. Gómez in violation of PR Law No. 44.

104. Defendants, Walgreen and Mrs. Peña and Mr. Morán, are individually and jointly liable towards Plaintiff uner Law No. 44.

105. Plaintiff, Gómez, reiterates the suffering of damages as stated above and requests damages for violation of these provisions in excess of $250,000.00.

### THIRD CAUSE OF ACTION – RETALIATION PURSUANT TO FEDERAL LAW

106. Plaintiff alleges and realleges all previous paragraphs as if fully alleged herein.

107. Defendant has intentionally violated Section 503 of the ADA, 42 U.S.C.A. § 12203, by terminating Plaintiff's employment as a result of Plaintiff's exercising rights and privileges protected by the ADA.

108. Defendant's termination of Plaintiff's employment on the basis of his disability has caused, continues to cause, and will cause Plaintiff to suffer substantial damages for future pecuniary losses, mental anguish, loss of enjoyment life, and other non-pecuniary losses.

109. Defendant has acted maliciously and with reckless disregard of Plaintiff's federally protected rights by retaliating against Plaintiff, thereby entitling Plaintiff to punitive damages.

110. Gómez has suffered damages as a result of Defendants acts and omissions.

### FOURTH CAUSE OF ACTION – DISCRIMINATION BASED ON NATIONAL ORIGIN UNDER PUERTO RICO LAW NO. 100

111. Plaintiff alleges and realleges all previous paragraphs as if fully alleged herein.

Case 3:13-cv-01635-PAD   Document 1   Filed 08/20/13   Page 15 of 18

Gómez v. Walgreens
*Complaint*

112. As a person born in the Dominican Republic, Gómez comprises a minority group in Puerto Rico.

113. As explained above, Gómez suffered from discrimination during his employment in Walgreen because of his national origin. Gómez on many occasions overheard jokes and comments regarding citizens of the Dominican Republic.

114. Gómez was qualified for the position in the Grocery Department yet he was rejected by Defendants Walgreen and Peña because of mixed motives including his national origin and his impairment.

115. Gómez was then fired due to Mrs. Peña's discriminatory animus toward Gómez.

116. Upon information and belief, the grocery position remained opened for weeks after Gómez requested it on or about the month of October of 2012.

117. The events described herein also constitute a violation of Puerto Rico Law No. 100 of June 30, 1959.

118. Defendants discriminated against Gómez based on his national origin.

119. Due to Defendants' acts, Plaintiffs' have suffered from emotional distress, anguish, and loss of enjoyment of life, among others.

120. Law No. 100 provides for double damages for violation of its provisions which are estimate in no less than $500,000.00.

121. Peña and Morán are also directly liable for their discriminatory acts against Gómez under Law 100.

### FIFTH CAUSE OF ACTION – STATUTORY PAY FOR UNLAWFUL TERMINATION UNDER PR LAW NO. 80 OF 1976

122. Plaintiff alleges and realleges all previous paragraphs as if fully alleged herein.

123. The events described herein constitute a discharge without just cause, in violation of Law 80 of May 30, 1976.

124. Plaintiff Gómez consistently received evaluations in which he exceeded the requirements of his jobs.

125. Defendants never complied with the progressive discipline process applicable in this jurisdiction before terminating Mr. Gómez.

126. Gómez was unlawfully dismissed from his job on December 14, 2012.

127. Defendants owe Plaintiff, Gómez, the statutory severance payment according to his 5 years and 2 months of employment with Defendant, Walgreen.

128. Defendants owes Mr. Gómez the "mesada" which is salary equivalent to 22.9 weeks of work; that is, $6,732.60.

## SIXTH CAUSE OF ACTION – VIOLATION OF THE FAMILY MEDICAL LEAVE ACT OF 1993

129. Defendant Walgreen is a covered entity under the Family Medical Leave Act of 1993, 29 U.S.C.A. § 2601 et seq.

130. Gómez had been employed by Defendants for more than a year and had worked at least 1,250 hours preceding his right to request leave.

131. On various occasions, Gómez informed Defendant and Peña that his father was suffering from Alzheimer's disease, that he was the sole caretaker, and that he needed to have some time available on Fridays to confer with his father's doctor and/or to take care of his father.

132. Gómez was entitled to obtain leave under the FMLA.

133. Despite Gómez's request, Peña placed Gómez on a schedule where it would be specially difficult for him to take care of his father.

134. When Plaintiff complained of the previous, Peña wrongfully informed Plaintiff that leave under the FMLA would only grant him a year of unpaid leave and proposed such option to Plaintiff.

135. Plaintiff explained to Peña that he could not afford to take full leave because he needed the money.

136.    Peña never informed Plaintiff that leave under the act may be taken on an intermittent or reduced schedule basis. See 29 U.S.C.A. § 2613(b)(1).

137.    Even when Gómez had available the statutory rights afforded by the FMLA, Defendant and Peña not only failed to inform him of his rights but also retaliated against him for his expressed intention of using those rights. See 29 USCA § 2615

138.    Defendant and Peña interfered with Plaintiff's federal statutory rights by denying his entitlements under the law.

139.    Both Defendant and Peña are jointly and severably liable for the breach described herein and are responsible for the damages caused to Plaintiff under this cause of action.

## VII. RELIEF

WHEREFORE, the Plaintiff prays this Honorable Court:

1. Enter a declaratory judgment against Defendants and find it in violation of the constitutions and laws of the Commonwealth of Puerto Rico and of the United States of America.

2. Order the Defendant to make the Plaintiff whole by ordering payment of damages as follows:

(i)   back pay and related benefits in an amount no less than $5,000.00;

(ii)  compensatory damages as a result of the illegal acts in an amount no less than $300,000.00;

(iii) double damages above the mentioned amounts in excess of the amount $305,000.00;

(iv)  damages for mental anguish, mental and emotional sufferings and distress in excess of $250,000.00;

(v)   punitive damages of less than $550,000.00;

(vi) statutory separation pay in an amount no less than $6,732.60.

3. Award the Plaintiff the cost of his action, together with reasonable attorney's fees.

4. Award the Plaintiff prejudgment interest.

5. Grant the Plaintiff such other relief as this Honorable Court deems appropriate and proper.

A JURY TRIAL IS HEREBY REQUESTED.

RESPECTFULLY SUBMITTED.

In Guaynabo, Puerto Rico this 20th day of August of 2013.

| | |
|---|---|
| **JUAN R RIVERA FONT LLC** | **RIOS GAUTIER & CESTERO, C.S.P.** |
| Tres Ríos Building Suite, Office 602 | Tres Ríos Building Suite 300 |
| 27 González Giusti Ave. | 27 González Giusti Ave. |
| Guaynabo, PR 00968 | Guaynabo, PR 00968 |
| Tel (787) 751-5290 | Tel (787) 753-7750 |
| Fax (787) 751-6155 | Fax (787) 759-6768 |
| | |
| /s/ Juan R. Rivera Font | /s/ Maria Cristina Mullan Dávila |
| **JUAN R. RIVERA FONT** | **MARIA CRISTINA MULLAN DAVILA** |
| USDC No. 221703 | USDC No. 224304 |
| juan@riverafont.com | *cristina.mullan@rgclawpr.com* |